**W.M., Individually and on Behalf of, O.M., L.S., Individually and on Behalf of, O.M., Plaintiffs,**

**v.**

**The LAKELAND CENTRAL SCHOOL DISTRICT, Defendant.**

**No. 09 Civ. 9335 (JSR).**

United States District Court, S.D. New York.

March 10, 2011.

---

Lawrence D. Weinberg, Law Office of Lawrence D. Weinberg Brooklyn, NY, for Plaintiffs.

Garrett Lord Silveira Shaw & Perelson, LLP, Highland, NY, Mark Craig Rushfield, Shaw, Perelson, May & Lambert, LLP, Poughkeepsie, NY, for Defendant.

### MEMORANDUM ORDER

JED S. RAKOFF, District Judge.

Plaintiffs, W.M. and L.S., on behalf of their child O.M., bring this lawsuit against the Lakeland Central School District (the "School District"), seeking relief under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415(i)(2). Plaintiffs allege that their child required special education and related services to accommodate her disabilities during the 2007–2008 year but was denied an appropriate public education, forcing the plaintiffs to remove the child from public school, enroll her in a private institution—the Wellspring Foundation's Arch Bridge School

("Wellspring")—and pay private tuition. As required by the IDEA, plaintiffs, before initiating this lawsuit, first brought an administrative due process proceeding against the defendant School District in order to secure reimbursement of the tuition payments they had paid to Wellspring. The impartial hearing officer ("IHO") found that the parents were entitled to reimbursement for the entire 2007–2008 school year, but this decision was reversed in part by the State Review Officer of the New York State Education Department ("SRO"), who found that the plaintiff parents were only entitled to reimbursement for a portion of the school year—from March 28, 2008 onward. The plaintiffs therefore commenced this lawsuit, seeking reimbursement for the entire 2007–2008 school year. In turn, the defendant School District counterclaimed, contending that the plaintiffs are not entitled to any tuition reimbursement whatever, even for the period from March 28, 2008 to the end of the school year. Both parties have now filed motions for summary judgment.

For the reasons stated below, the Court concludes that the matter is ripe for summary judgment and that, while the SRO's position is the closest to being correct, plaintiffs are entitled to reimbursement not only for the period from March 28, 2008 to the end of the 2007–2008 school year but also for the period between March 1, 2008 and March 28, 2008. Accordingly, the Court grants the plaintiffs' motion for summary judgment in part and orders the defendant to reimburse the plaintiffs for tuition expenses for the period from March 1, 2008 through the end of the school year. The Court also grants the defendants' motion for summary judgment in part and finds that the plaintiffs are not entitled to tuition reimbursement for the period prior to March 1, 2008. In all other respects, the motions are denied.

The IDEA requires states receiving federal funds to provide to all children with disabilities residing in the state a free appropriate public education ("FAPE") "that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A), § 1412(a)(1)(A). For each child covered by the IDEA, public schools must develop an individualized education program ("IEP") that "sets out the child's present educational performance, establishes annual and short-term objectives for improvements in that performance, and describes the specially designed instruction and services that will enable the child to meet those objectives." 20 U.S.C. § 1414(d)(2)(A). *See Honig v. Doe,* 484 U.S. 305, 311, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988). In New York, the IEP for a given child is developed by a committee on special education ("CSE"), which typically consists of the child's parents and teachers, as well as representatives of the local school board.

The IDEA also mandates that states provide parents with the opportunity to present complaints "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(6)(A). New York has adopted a two-tiered system of administrative review whereby parents wishing to challenge an IEP must first have the IEP reviewed by an impartial hearing officer ("IHO"), N.Y. Educ. Law § 4401(1). Following the IHO's decision, an aggrieved party may appeal to a state review officer ("SRO"). N.Y. Educ. Law § 4404(2). After exhausting these remedies, any party still aggrieved may bring a civil action challenging the decision in state or federal court.

20 U.S.C. § 1415(i)(2)(A); N.Y. Educ. Law § 4404(3).

■ Even before the administrative review process is complete, the parents of a child who is not receiving a FAPE "may remove the child to an appropriate private school and then seek retroactive tuition reimbursement from the state." *Cerra v. Pawling Cent. Sch. Dist.*, 427 F.3d 186, 192 (2d Cir.2005) (citation omitted). The parents are entitled to tuition reimbursement if three conditions are satisfied: (1) the educational program recommended by the IEP was inappropriate to meet the child's needs; (2) the alternative placement selected by the parents was appropriate; and (3) equitable factors weigh in favor of reimbursement. *See Frank G. v. Bd. of Educ. of Hyde Park*, 459 F.3d 356, 363–64 (2d Cir.2006).

Having reviewed the statutory background, the Court now turns to the pertinent facts of this case which, unless otherwise indicated, are undisputed. O.M., child of W.M. and L.S., attended the School District's Walter Panas High School for three years—the 2004–2005, 2005–2006, and 2006–2007 school years—and, during this time, she was not classified as a disabled student. Defendant's Rule 56.1 Statement in Support of Motion for Summary Judgment ("Def. 56.1") ¶¶ 1–2.[1] After verbalizing suicidal thoughts during the spring of 2007, O.M. was hospitalized at Four Winds Hospital on April 15, 2007 for three weeks, followed by two weeks of attendance in an adolescent day program. *Id.* ¶ 3. On July 3, 2007, O.M. was again hospitalized after exhibiting symptoms of being at risk of suicide and was treated, inpatient, at New York Presbyterian Hospital for two weeks, after which, following a brief period of outpatient care, she was readmitted to New York Presbyterian Hospital for about 7 to 8 days. *Id.* ¶ 5. During O.M.'s second admittance to New York Presbyterian Hospital during the summer of 2007, the plaintiffs were advised by the hospital's psychiatrist and social worker that it was unsafe for O.M. to live at home and that she needed to be in a 24/7 residential care facility where she could be constantly monitored. *Id.* ¶ 6.

In response to this advice, the plaintiffs began researching 24/7 residential care facilities and concluded that they were "most comfortable" with Wellspring. *Id.* ¶¶ 8–9. On August 15, 2007, Wellspring accepted O.M. into its program. On the same day, plaintiffs emailed the Walter Panas High School guidance counselor that O.M. would not be starting the school year at the public high school because she would be starting a treatment program at Wellspring. Def. 56.1 ¶ 10; Pl. Ex. G4. In this email, they also indicated that they hoped her stay at Wellspring would be "relatively short-lived" so that she could return to Panas. Pl. Ex. G4.

Although the Walter Panas High School guidance counselor was away on summer break during the period including August 15, 2007, upon her return, on August 27, 2007, she called plaintiff L.S. and advised L.S. to contact David Diamond, the School District's Special Education Supervisor. Def. 56.1 ¶ 17. On August 27, 2007, plaintiff W.M. wrote a letter to Diamond requesting a special education evaluation for O.M. "on the ground that [O.M. was] emotionally incapable of attending regular public school" and was currently attending Wellspring. Def. Ex. 3.

On September 17, 2007, the plaintiff parents met with Diamond and the School District's Director of Pupil Personnel Ser-

---

1. All citations to a party's statement of undisputed facts made pursuant to Local Rule 56.1 incorporate the corresponding paragraphs of the opposing party's response.

vices, Mary Ellen Herzog, on September 17, 2007 and, were told (incorrectly) that, as a result of the student's attendance at a facility outside of the state, the School District no longer had responsibility for the student. *See* Impartial Hearing Tr., 10/06/2008, at 49–50. In response, the plaintiff parents sent a letter to Herzog, dated October 5, 2007, indicating that they disagreed with Herzog as to whether the School District had responsibility. Def. Ex. 4. Stating that a FAPE was "at issue," the plaintiff parents requested that the School District proceed with a special education evaluation of O.M. on the grounds that she was "emotionally incapable" of attending a public school. *Id.* Herzog responded in turn with a letter asserting that the district of the child's present location had legal responsibility, but that nonetheless the School District would evaluate O.M., provided she was made available in a designated Lakeland school. Def. Ex. 5.

On October 26, 2007, the plaintiff parents wrote to Herzog that they had arranged for a psychologist from the Connecticut Center for Children and Families, to conduct a psychoeducational evaluation of O.M., that they expected the evaluation to be completed within a few weeks, that they understood from their "advisers and lawyers that [O.M. was] not required to come to 'a designated Lakeland school' for evaluation," and that Wellspring had advised them that "removing [O.M.] for an evaluation would not be in her best interests at this time." Def. Ex. 6. The letter also stated that the School District was "more than welcome" to see the student at Wellspring. *Id.*

Dr. Randall Thomas, the psychologist from the Connecticut Center for Children and Families, first met with the plaintiffs on October 27, 2007, but did not meet with O.M. to begin conducting his evaluation until December 3, 2007. Def. 56.1 ¶ 39.

Plaintiff L.S. testified that the evaluation was delayed because the therapist at Wellspring did not think it was "wise" for O.M. to go through multiple hours of psychoeducational testing at a time when she was even more seriously depressed than she usually was. *Id.* ¶ 44. While the parties dispute whether it was necessary to wait until December 3, 2007 to proceed with the evaluation, it is undisputed that O.M. was placed on "constant observation" status for at least one weekend during the period between September 30, 2007 and November 20, 2007. *Id.* ¶ 50.

In any event, on November 14, 2007, plaintiffs sent another letter to Herzog, stating that the psychoeducational evaluation had been delayed because the student's depression had "worsened dramatically in recent weeks". Def. Ex. 7. They also indicated that they believed the documentation they had already sent the district was "more than adequate to determine [O.M.'s] status as a special education student" and urged "the school system to move forward without the psychoeducational evaluation." *Id.* In response to this letter, the School District sent a letter to the plaintiffs, dated December 3, 2007, advising that its receipt of the private evaluation and a complete social history were required for the CSE to convene. Def. Ex. 8.

On December 12, 2007, plaintiffs sent a letter to the defendant indicating that the student's psychoeducational testing was "nearly completed" and that the evaluation report would be available in mid-January. Def. Ex. 9. The psychoeducational testing of O.M. by Dr. Thomas was, in fact, completed on December 10, 2007, Def. 56.1 ¶ 57, but plaintiff L.S. testified that she did not receive Dr. Thomas's report until the very beginning of February 2008. *Id.* ¶ 59.

The plaintiff parents met with a School District social worker, Deborah Mungavin, in January of 2008. While Mungavin testified that she did not remember everything the plaintiffs said at the meeting, she testified that the plaintiff parents advised her that O.M. was doing well at Wellspring and that they expected her to complete her senior year at Wellspring. Impartial Hearing Tr., 02/09/2009, at 653–654. By letter dated February 1, 2008, the plaintiffs mailed Dr. Thomas's psychoeducational evaluation report to Herzog. Def. 56.1 ¶ 62. By letter dated March 4, 2008, Herzog invited the plaintiffs to attend a CSE meeting on March 28, 2008 for an initial eligibility determination. Def. Ex. 18; Pl. Ex. G13. The March 4, 2008 letter stated: "[p]reviously you have received a Procedural Safeguards Notice that explains your rights regarding the special education process." *Id.* Plaintiffs, however, claim to have never actually received any notice of procedural safeguards, and the defendant has not adduced any other evidence that the notice of procedural safeguards was ever sent to plaintiffs.

The IEP generated at the CSE meeting held on March 28, 2008 determined that O.M. was eligible for special education services as a student with an emotional disability and "suicidal ideation with the need for 24 hour a day supervision." Def. 56.1 ¶ 68. The IEP recommended a special education day program at the Walter Panas High School known as the Oasis Program.

By letter to Herzog, dated May 1, 2008, the plaintiffs indicated that they had visited the Oasis Program and determined that it was not the right program for O.M. because it did not provide the "round-the-clock therapeutic care 24/7" that O.M. was receiving at Wellspring. Pl. Ex. G15. Following O.M.'s discharge from Wellspring in mid-June of 2008, educational advocate

Susan Lugar, by letter dated June 26, 2008 to the School District (the "impartial hearing request"), requested an impartial hearing on behalf of the plaintiffs and set forth nine issues to be addressed by the impartial hearing officer, including, *inter alia,* whether the IEP was appropriate for O.M., whether Wellspring was an appropriate placement for O.M., and whether the parents were entitled to tuition reimbursement. Def. Ex. 1 at 3.

An impartial hearing convened on October 6, 2008. At this hearing, the defendant moved to disallow issues in the impartial hearing that had not been raised in the parents' impartial hearing request. By interim order dated December 22, 2008, the IHO excluded any argument or evidence related to "Child Find" violations. *See* Interim Order of IHO William J. Well, Defendant's Response to Plaintiff's Rule 56.1 Statement, Ex. A.

The hearing concluded on February 9, 2009 after five days of testimony. In a decision dated May 11, 2009, the IHO found that the district failed to offer O.M. a FAPE for the 2007–2008 school year; that the parents' placement at Wellspring Foundation was appropriate; and that the equities favored the parents. Findings of Fact and Decision of Hearing Officer William J. Wall dated May 11, 2009 ("IHO Decision"), at 13–14. While noting that "there were significant delays before the CSE convened on March 28, 2008 from the time of the August 27, 2007 request for evaluation" and that the "delays were attributable to both parties," the IHO found that the parents cooperated in every phase of the evaluation and ordered the School District to reimburse the parents for the 2007–2008 school year. *Id.* at 6, 14.

The School District then appealed the decision of the IHO to the SRO. The SRO affirmed the IHO's determinations that the IEP did not substantively offer the student

a FAPE and that the parents' unilateral placement was appropriate. However, the SRO reversed the IHO's decision to the extent that it had ordered the district to reimburse the parents for the tuition costs from the beginning of the 2007–2008 school year through March 27, 2008. It did, however, find that the equities did not "preclude reimbursement for the time period of March 28, 2007 to the end of the 2007–08 school year." Decision of the State Review Officer Paul F. Kelley dated August 7, 2009, No. 09–067 ("SRO Decision"), at 21. Following the SRO decision, the plaintiffs filed this action and the defendants, as noted, counterclaimed. As noted, both parties subsequently moved for summary judgment. The plaintiffs also moved to dismiss the defendant's counterclaim and to submit additional evidence they allege was improperly excluded by the IHO.

■ Although couched in the terms of claims, counterclaims, motions to dismiss or for summary judgment, and the like, the procedures that apply when an aggrieved party challenges an administrative decision pursuant to the IDEA are somewhat *sui generis* or, at least, do not fit the ordinary model of either a civil lawsuit or an administrative appeal. Rather, the district court first conducts an "independent review of the administrative record" and then makes a determination based on a "preponderance of evidence." *See Gagliardo v. Arlington Central School District*, 489 F.3d 105, 112 (2d Cir.2007).

■ As noted, a school district is required to reimburse parents for private tuition when (1) the educational program recommended by the IEP was inappropriate; (2) the alternative placement selected by the parents was appropriate; and (3) equitable factors weigh in favor of reimbursement. In the present posture, the defendant no longer disputes that the educational program recommended by the IEP was inappropriate or that the parents' alternative placement was appropriate. Thus, the focus is on whether equitable factors support or contradict reimbursement and, if so, for what period. Although deference is due to school authorities when issues of education policy are involved, *see Walczak v. Fl. Union Free Sch. Dist.*, 142 F.3d 119, 129 (2d Cir.1998), such deference is less weighty here where the issue in dispute is the balancing of the equities, a matter as to which district courts not only have particular expertise but also broad discretion. As stated by the Court of Appeals, "[w]here a school district fails to provide a FAPE and the private placement is found to be appropriate, 'the district court enjoys broad discretion in considering equitable factors relevant to fashioning relief.'" *Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 112 (2d Cir.2007).

One equitable factor here relevant is whether the plaintiff parents provided adequate notice to the School District of their intent to remove their child from public school, thus providing the school district with a meaningful opportunity to minimize its expenses by developing its own IEP that would provide the child with a FAPE within the School District. Because of the importance of providing such notice to a school district, the IDEA provides that:

> (iii) The cost of reimbursement ... may be reduced or denied—
>
> (I) if—
>
> (aa) at the most recent IEP meeting that the parents attended prior to removal of the child from the public school, the parents did not inform the IEP Team that they were rejecting the placement proposed by the public agency to provide a free appropriate public education to their child, including stating their concerns and their intent to enroll their child in a private school at public expense; or

(bb) 10 business days ... prior to removal of the child from the public school, the parents did not give written notice to the public agency of the information described in item (aa); ... [or]

(III) upon a judicial finding of unreasonableness with respect to actions taken by the parents.

*See* 20 U.S.C. § 1412(a)(10)(C).

▮ The defendant argues that the plaintiffs should be denied reimbursement because they failed to provide the school with proper notice of their intent to remove O.M. from public school and certainly did not provide such notice at least 10 business days before removing O.M. from public school. However, such a failure is not an automatic bar to reimbursement; the IDEA simply states that failure to do so "may" be grounds for denying or reducing reimbursement, leaving the matter to the Court's informed discretion. Moreover, the IDEA includes an exception to the notice requirement, which excuses a parent's failure to notify the district of a private placement if "the parents had not received notice ... of the notice requirement in clause (iii)(I)." 20 U.S.C. § 1412(a)(10)(C)(iv). Here, there is no evidence that the parents were informed of the IDEA's notice requirement. Ultimately, the Court finds that while both parties are at fault for various delays between the initial placement and the CSE meeting, the equities favor providing partial reimbursement to the plaintiffs.

▮ Turning first to tuition reimbursement for the period following the CSE meeting on March 28, 2008, the Court finds that the equities favor reimbursing the plaintiffs for their tuition expenses during this period of time. By the time of the CSE meeting, the district clearly had notice of O.M.'s disability and of their obligation to provide her with a FAPE. Defendant argues that this was too late, be-

cause the parents' precipitous actions "did not give [the School District] a meaningful opportunity to consider whether V.P. could receive a FAPE." *Carmel Central School District v. V.P.*, 373 F.Supp.2d 402, 414–15 (S.D.N.Y.2005). Defendant's reliance on Judge McMahon's decision in *Carmel* is misplaced, for two reasons. First, *Carmel* relied heavily on cases that held that the IDEA barred reimbursement to parents of children who had not previously received special education services from the public school—a holding subsequently rejected by the Supreme Court in *Forest Grove School District v. T.A.*, ── U.S. ──, 129 S.Ct. 2484, 2488, 174 L.Ed.2d 168 (2009). Second, the Court in *Carmel* made clear that "[t]wo twists make this case different from other IDEA tuition reimbursement cases": (1) the fact that V.P. had never attended public school or received any special education or related services from the Carmel Central School District and (2) the fact that the school district that was responsible for V.P. at the time when V.P. was enrolled in private school was the Yonkers School District, a non-party, and not the Carmel Central School District. *Carmel*, 373 F.Supp.2d at 404. In this case, neither of these "twists" are present, since O.M. had previously attended public school in the defendant school district and the plaintiffs were residing within the school district at the time that O.M. was removed from public school.

More generally, in many of the cases where reimbursement has been denied, the parents utterly failed to notify the school district of the unilateral placement or even actively tried to conceal information from the district. *See, e.g., M.C. v. Voluntown Bd. of Educ.*, 226 F.3d 60, 68 (2d Cir.2000) (denying reimbursement of private counseling fees where parents failed to notify school district of private counseling until eight months after counseling concluded);

*Carmel Central School District v. V.P.,* 373 F.Supp.2d 402, 409 (S.D.N.Y.2005) (denying reimbursement of private school tuition where parents "provided inaccurate information to [the school district] for many years" and "actively concealed" the child's disability). In this case, the facts establish that the parents acted in good faith and, for the most part, were very cooperative. While the parents may have provided imperfect notice, they did write the School District twice before the 2007–2008 school year even began—first on August 15, 2007 to report that they were placing O.M. at Wellspring and, again, on August 27, 2007 to request a special education evaluation. By contrast, the School District initially denied that it was even responsible for conducting an evaluation of O.M. and it maintained this incorrect position until at least October 11, 2007. Thus, at a minimum, the equities favor reimbursing the plaintiffs for tuition expenses from the period of March 28, 2008 through the end of the 2007–2008 school year.

■ Reimbursement for the period before March 28, 2008 presents a closer question. The statutory framework contemplates that the School District will be given an opportunity to develop a FAPE within the District's own schools—thus saving the cost of reimbursement—but here the plaintiffs' initially inadequate notice made this more difficult. More importantly, once the School District recognized its responsibilities and tried to develop a FAPE, the parents' own acts delayed this process. In particular, even after giving allowance for concerns about how scheduling O.M.'s evaluation might at certain times itself have a deleterious effect on her suicidal tendencies, nonetheless, it seems clear that her parents could have produced an evaluation and completed a social history sooner than they did. The contribution of these factors precludes any reimburse-

ment for the period prior to February 1, 2008, when the completed social history and the psychoeducational report were sent to the district, because, prior to that date, the School District could not have been expected to produce an IEP.

But the School District then delayed convening the CSE meeting until March 28, 2008. Since, on any fair analysis, it should not have taken more than a month to convene the CSE meeting, the Court finds that the equities favor reimbursing the plaintiffs for the period of March 1, 2008 through the end of the school year, rather than March 28, 2008 through the end of the school year.

■ It remains only to make mention of plaintiffs' separate motion to submit a declaration of L.S., which allegedly demonstrates the School District's affirmative failure to identify O.M. as a disabled child and evaluate her in accordance with the so-called "Child Find" requirement. *See* 20 U.S.C. § 1412(a)(3); 34 C.F.R. § 300.111(c)(1).

At the impartial hearing, the IHO excluded evidence of Child Find violations because the issue was not raised in the parents' impartial hearing request. *See* Interim Order of IHO William J. Well, Defendant's Response to Plaintiff's Rule 56.1 Statement, Ex. A. The Court agrees with the IHO that the impartial hearing request did not raise the Child Find issue. Indeed, the impartial hearing request did not refer in any way to communications between the plaintiffs and the School District prior to August 15, 2007 or any information that may have been possessed by the School District concerning O.M.'s condition prior to August 15, 2007.

■ While the IDEA permits the district court to hear additional evidence in conducting its review of the administrative record, most courts decline to review is-

sues that were properly excluded at the administrative level. *See, e.g., M.H. v. New York City Dep't of Educ.,* 712 F.Supp.2d 125, 159 (S.D.N.Y.2010) (declining to review issue that was not raised in impartial hearing request). That also makes sense here. Moreover, even if the plaintiffs' additional evidence were admitted, the Court's underlying conclusion would not change. Regardless of whether certain district employees were aware of O.M.'s condition in spring of 2007, the parents still should have notified the school district of their intention to remove O.M. from public school before enrolling her at Wellspring. Also, it is not clear that the district would have had an opportunity to evaluate O.M., convene a CSE meeting, and develop an IEP before she was enrolled at Wellspring. Thus, the conclusion that the plaintiffs are only entitled to partial tuition reimbursement from March 1, 2008 to the end of the school year would not change.

Accordingly, the Court grants in part the plaintiffs' summary judgment motion and finds that they are entitled to be reimbursed by defendant for tuition expenses for the period from March 1, 2008 through the end of the 2007–2008 school year, but denies the plaintiffs' summary judgment motion in part and finds that they are not entitled to tuition reimbursement for the period prior to March 1, 2008 and are not entitled to attorneys' fees. The Court grants in part the defendant's summary judgment motion and finds they are not required to reimburse the plaintiffs for the period prior to March 1, 2008, but denies the defendant's summary judgment motion to the extent that it seeks to avoid reimbursing plaintiffs' tuition expenses for the period staring March 1, 2008. The Court also grants the plaintiffs' motion to dismiss the defendant's counterclaim and denies the plaintiffs' motion to admit additional evidence. The Clerk of the Court is here-by directed to enter judgment and to close the case.

SO ORDERED.