J.C., et. al. v. Katonah-Lewisboro School District

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 9ᵗʰ day of May, two thousand seventeen.

PRESENT: JOHN M. WALKER, Jr.,
         DENNIS JACOBS,
         BARRINGTON D. PARKER,
                        Circuit Judges.

- - - - - - - - - - - - - - - - - - - -X
J.C., individually and on behalf of
Tate C., a minor, and S.C.,
individually and on behalf of Tate
C., a minor,
         Plaintiffs-Appellees,

         -v.-                                    16-1838

KATONAH-LEWISBORO SCHOOL DISTRICT,
         Defendant-Appellant.

- - - - - - - - - - - - - - - - - - - -X

FOR APPELLANT:                JAMES P. DROHAN, Thomas, Drohan,
                              Waxman, Petigrow & Mayle, LLP,
                              Hopewell Junction, New York.

1

**FOR APPELLEES:**                    LAWRENCE D. WEINBERG,
                                      Bloomfield, New Jersey.

Appeal from judgment of the United States District Court for the Southern District of New York (Karas, <u>J.</u>).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the judgment of the district court be **AFFIRMED.**

The Katonah-Lewisboro School District (the "School District") appeals from the judgment of the United States District Court for the Southern District of New York (Karas, <u>J.</u>) granting summary judgment to the parents of T.C. on their Individuals with Disabilities Education Act ("IDEA") claim for reimbursement of private school tuition. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review. We affirm.

T.C., now 14, suffers from multiple disabilities affecting his attention span, ability to learn, and motor skills. He attended classes at the School District from kindergarten through third grade, then transferred to a private school called the Prospect School for fourth grade through sixth.

The IDEA guarantees children with disabilities a "free and appropriate public education." <u>R.E. v. N.Y.C. Dep't of</u>

2

Educ., 694 F.3d 167, 174-75 (2d Cir. 2012).  If a public school has failed in that obligation, the statute allows parents to transfer their child into private school and seek retroactive tuition reimbursement from the state.  See C.F. ex rel. R.F. v. N.Y.C. Dep't of Educ., 746 F.3d 68, 73 (2d Cir. 2014).  T.C.'s parents now seek reimbursement for tuition they paid to the Prospect School during T.C.'s fifth and sixth grades.[1]  For T.C.'s parents to prevail, they must show that: 1) the School District failed to provide T.C. with a free and appropriate public education; 2) they placed T.C. in an appropriate private school; and 3) the equities favor reimbursement.  Id.

As is required, T.C.'s parents first sought reimbursement through New York state's administrative process before filing suit in federal court.  The Initial Hearing Officer ("IHO") found that the parents were entitled to reimbursement; but a State Review Officer ("SRO"), functioning as a second level of administrative review, reversed that decision.  Courts generally owe deference to the decision of an SRO, but that deference only extends insofar as the SRO decision is well-reasoned and persuasive.  R.E., 694 F.3d at 189.

---

[1] T.C. was also at the Prospect School in fourth grade, but that year is not at issue in this appeal.

We affirm the district court's holding that the decision of the SRO is entitled to reduced deference, and that the School District proposed class sizes for T.C. which were too large for him to receive an appropriate public education. Under the IDEA, a school district must annually create a written Independent Education Program ("IEP") for each student with disabilities. Id. at 175. T.C.'s IEPs for fifth and sixth grade both proposed a classroom of twelve students, one teacher, and two teaching aides/assistants (educators refer to this as a "12:1:2" classroom). However, a pediatric neuropsychologist recommended a classroom with eight students, one teacher, and one teaching aide/assistant (an "8:1:1" classroom), and a clinical neuropsychologist testified that a classroom with twelve students would be too overwhelming for T.C. to learn. (Both neuropsychologists were privately hired by T.C.'s parents.) The parents contend that the School District's failure to provide T.C. with an 8:1:1 classroom on his IEPs denied him the free and appropriate public education the IDEA promises.

The SRO was not required to automatically accept the neuropsychologists' recommendations as to class size, but he was required to consider the recommendations and, if he rejected them, to convincingly explain why. See M.H. v.

4

N.Y.C. Dep't of Educ., 685 F.3d 217, 244 (2d Cir. 2012) (holding that when it comes to deference, "the persuasiveness of a particular administrative finding, or the lack thereof, is likely to tell the tale" (internal quotation marks omitted)).

The SRO offered two principle reasons for dismissing the 8:1:1 class size recommendation. First, he noted that the ratio of adults to students in a 12:1:2 class is the same as in an 8:1:1 class. But the decision fails to account for the evidence that--given that T.C. is easily distracted--the number of students in the classroom counts, not just the ratio of students to adults. The SRO also fails to acknowledge that the educational system tends to focus on the number of teachers in a classroom rather than the number of adults, presumably because a qualified special education teacher may be more effective than a teaching aide or assistant. Second, the SRO dismissed the neuropsychologists' recommendations on the ground that T.C.'s distraction issues could be mitigated enough so that T.C. could learn in a larger classroom. None of the evidence he relies on for that point, however, suggests that T.C.'s distraction problems could be resolved without an 8:1:1 classroom.

We therefore agree with the district court that the SRO's ruling that the School District provided T.C. with a free and appropriate public education is entitled to diminished deference. We instead defer to the decision of the IHO, and we agree that the School District's 12:1:2 classroom would not have provided T.C. with a free and appropriate public education. M.H., 685 F.3d at 246 ("it is entirely appropriate for the court, having in its turn found the SRO's conclusions unpersuasive even after appropriate deference is paid, to consider the IHO's analysis, which is also informed by greater educational expertise than that of judges").[2]

The SRO never reached the questions of whether placement at the Prospect School was appropriate or whether the equities favored reimbursement. The IHO answered both those questions in the affirmative, however, and in the absence of an SRO holding, we may defer to the IHO's

---

[2] This appeal was briefed after the Supreme Court's decision in Endrew F., which interpreted the free and appropriate public education due under IDEA. Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist., 137 S. Ct. 988 (2017). Because we conclude that the School District failed to provide T.C. with a free and appropriate public education under the existing precedent in this circuit, we need not decide whether Endrew F. raised the bar for a free and appropriate public education or left Second Circuit precedent intact (the Supreme Court's decision certainly did not reduce the force of the requirement).

conclusions.  <u>C.F.</u>, 746 F.3d at 82.  Those conclusions are well-supported by the evidence and we agree with them: the Prospect School had a sophisticated special education program tailored to T.C.'s needs, and his parents actively cooperated with the School District in developing IEPs each year.

For the foregoing reasons, and finding no merit in the parties' other arguments, we hereby **AFFIRM** the judgment of the district court.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK