*Ferreira v. Aviles-Ramos*

# United States Court of Appeals
## For the Second Circuit

August Term 2023

Argued:  February 7, 2024
Decided:  October 30, 2024

No. 23-612

---

JUSTINE FERREIRA, Individually and as Parent and Natural Guardian of N.R.,

*Plaintiff-Appellant*,

*v.*

MELISSA AVILES-RAMOS, in her official capacity as Chancellor of the New York City Department of Education, NEW YORK CITY DEPARTMENT OF EDUCATION,

*Defendants-Appellees.*[*]

---

Appeal from the United States District Court
for the Southern District of New York
No. 21-cv-6012, Analisa Torres, *Judge*.

---

Before:  CARNEY, SULLIVAN, and LEE, *Circuit Judges*.

---

[*] The Clerk of Court is respectfully directed to amend the official case caption as set forth above. The complaint here was originally filed against Meisha Porter in her official capacity as Chancellor of the New York City Department of Education. Dr. Porter stepped down from her position in December 2021. As a result, under Fed. R. App. P. 43(c)(2), the current Chancellor, Melissa Aviles-Ramos, is automatically substituted as a party.

Justine Ferreira appeals from a judgment of the United States District Court for the Southern District of New York (Torres, *J.*) granting summary judgment in favor of Melissa Aviles-Ramos, in her official capacity as Chancellor of the New York City Department of Education, and the New York City Department of Education (collectively, the "DOE") on Ferreira's claim for reimbursement under the Individuals with Disabilities Education Act (the "IDEA"). Ferreira sought reimbursement from the DOE for the cost of her disabled son's private education during the 2019–2020 school year, alleging that the DOE had failed to offer her son a free appropriate public education. The Impartial Hearing Officer (the "IHO"), the State Review Officer (the "SRO"), and the district court below each found that Ferreira engaged in a course of conduct that frustrated the DOE's attempts to develop a suitable education plan for her son. Accordingly, they also concluded that the balance of the equities disfavored reimbursement. The factual record as to Ferreira's conduct is not in dispute nor is the finding that her conduct impeded the DOE. Rather, on appeal, Ferreira argues that the district court deferred to the IHO's and SRO's views of the equities and erred in doing so, raising a question that has split the district courts in this Circuit and that we have not yet resolved. We now hold that a district court reviewing a claim for reimbursement under the IDEA must independently evaluate the equities, without deferring to the state administrative agency's conclusion. Applying that rule, we conclude that reversal is not warranted in this case because the district court ultimately did balance the equities and did not abuse its discretion in doing so. We therefore **AFFIRM** the judgment of the district court.

AFFIRMED.

RORY J. BELLANTONI, Brain Injury Rights Group, Ltd., New York, NY, *for Plaintiff-Appellant*.

LORENZO DI SILVIO (Richard Dearing, Melanie T. West, *on the brief*), *for* Sylvia O. Hinds-Radix, Corporation Counsel of the City of New York, New York, NY, *for Defendants-Appellees*.

2

RICHARD J. SULLIVAN, *Circuit Judge*:

Justine Ferreira appeals from a judgment of the United States District Court for the Southern District of New York (*Torres, J.*) granting summary judgment in favor of Melissa Aviles-Ramos, in her official capacity as Chancellor of the New York City Department of Education and the New York City Department of Education (collectively, the "DOE") on Ferreira's claim for reimbursement under the Individuals with Disabilities Education Act (the "IDEA"). Ferreira sought reimbursement from the DOE for the cost of her disabled son's private education during the 2019–2020 school year, alleging that the DOE had failed to offer her son a free appropriate public education (a "FAPE"). The Impartial Hearing Officer (the "IHO"), the State Review Officer (the "SRO"), and the district court below each found that Ferreira engaged in a course of conduct that frustrated the DOE's attempts to develop a suitable education plan for her son. Accordingly, they also concluded that the balance of the equities disfavored reimbursement. The factual record as to Ferreira's conduct is not in dispute nor is the finding that her conduct impeded the DOE. Rather, on appeal, Ferreira argues that the district court erred in deferring to the IHO's and SRO's views of the equities, raising a question that has split the district courts in this Circuit and that we have not yet resolved. We

3

now hold that a district court reviewing a claim for reimbursement under the IDEA must independently evaluate the equities, without deferring to the state administrative agency's conclusion. Applying that rule, we conclude that reversal is not warranted in this case because the district court ultimately did balance the equities and did not abuse its discretion in doing so. We therefore AFFIRM the judgment of the district court.

## I. BACKGROUND

Justine Ferreira is the mother of N.R., a young boy who had cerebral palsy, epilepsy, and a brain injury that required him to receive special education services. [1] In 2017, as required by the IDEA, the DOE developed an individualized education plan (an "IEP") for N.R. for the 2017–2018 school year. Ferreira disagreed with the plan and instead enrolled her son at the International Academy of Hope ("iHope"), a private school in New York City providing special education services. Ferreira then filed an administrative complaint pursuant to the IDEA alleging that the DOE had failed to provide her son with a FAPE. The state's first-level adjudicator – the IHO – ordered reimbursement, and the DOE did not appeal.

---

[1] We are informed that N.R. passed away on October 5, 2021. *See* Ferreira Br. at 3.

4

In 2018, the DOE developed another IEP for Ferreira's son. Ferreira objected and enrolled her son in a private school called the International Institute for the Brain ("iBrain"). She then filed an administrative complaint alleging that the DOE had failed to offer N.R. a FAPE and seeking reimbursement for the cost of enrolling her son in private school. After an appeal, the state's second-level adjudicator – the SRO – ordered reimbursement. The DOE did not seek relief from that decision. *See* 20 U.S.C. § 1415(i)(2).

This appeal relates to the 2019–2020 school year. Once again, the DOE was required to develop a plan for providing N.R. with a FAPE. After communicating with Ferreira throughout the spring of 2019, the Committee on Special Education (the "CSE") met on May 20, 2019 to develop N.R.'s IEP. Following that meeting, which Ferreira received notice of but did not attend, Ferreira decided to re-enroll N.R. at iBrain, and she notified the DOE of her decision. Shortly thereafter, the CSE formally recommended N.R.'s placement at a public school located in N.R.'s home district. Dissatisfied with the placement, Ferreira filed another administrative complaint, alleging that the DOE had again failed to provide her son with a FAPE and requesting reimbursement for the cost of enrolling him at iBrain for the 2019–2020 school year.

5

After receiving evidence and hearing testimony over the course of twelve days in 2020, the IHO concluded that the DOE's proposed public-school placement for 2019-2020 had been appropriate and that reimbursement for private-school tuition was therefore not warranted. The IHO further concluded that, "to the extent the equities are considered, these facts would not justify reimbursement" because Ferreira's "failure to participate in the CSE process impeded the DOE's ability to include [Ferreira] at the [May 20, 2019] CSE meeting and prevented the DOE from having a current evaluation [of her son]." App'x at 32.

Ferreira appealed to the SRO, who affirmed the IHO's decision to deny reimbursement. The SRO concluded that the hearing record did *not* support a finding that DOE had offered Ferreira's son a FAPE but did support a finding that the private placement at iBrain was appropriate. *Id.* at 59. The SRO nevertheless agreed with the IHO that Ferreira had impeded the DOE's IEP process. The SRO noted that the CSE had been forced to "craft[] an IEP based on [a] limited amount of information, despite the [school] district's efforts," *id.* at 50, and that Ferreira had "withh[eld]" information from the district "both in not producing the student for scheduled evaluations and in not assisting in getting updated progress reports

from iBrain," *id.* at 59. The SRO therefore determined that the balance of the equities disfavored reimbursement.

Having exhausted her administrative remedies, Ferreira brought a civil action against the DOE in federal court pursuant to 20 U.S.C. § 1415(i)(2). Both parties filed dispositive motions, each arguing the balance of the equities.[2] The district court granted the DOE's motion and denied Ferreira's, concluding that Ferreira had "acted unreasonably and frustrated the DOE's attempts to satisfy its obligations under the IDEA," and that reimbursement was therefore not warranted. *Id.* at 189. This appeal followed.

## II. STATUTORY FRAMEWORK

States receiving federal funds under the IDEA must provide disabled children with a FAPE. *See* 20 U.S.C. § 1412(a)(1)(A). "When a state receiving IDEA funding fails to give a disabled child such an education, the child's parent may remove the child to an appropriate private school and then seek retroactive tuition reimbursement from the state." *Cerra v. Pawling Cent. Sch. Dist.*, 427 F.3d 186, 192 (2d Cir. 2005) (internal quotation marks omitted). The Supreme Court

---

[2] "Though the parties in an IDEA action may call the procedure a motion for summary judgment, the procedure is in substance an appeal from an administrative determination, not a summary judgment." *Lillbask ex rel. Mauclaire v. State of Conn. Dep't of Educ.*, 397 F.3d 77, 83 n.3 (2d Cir. 2005) (alterations and internal quotation marks omitted).

has held that courts' authority to order reimbursement derives from the IDEA's directive to "grant such relief as the court determines is appropriate" to "[a]ny party aggrieved by the findings and decision" of the state's final administrative adjudicator of IDEA complaints. 20 U.S.C. § 1415(i)(2)(C)(iii), (i)(2)(A); *see Sch. Comm. of Town of Burlington v. Dep't of Educ. of Mass.*, 471 U.S. 359, 369–70 (1985); *Florence Cnty. Sch. Dist. Four v. Carter ex rel. Carter*, 510 U.S. 7, 12 (1993). While section 1415(i)(2) does not explicitly authorize courts to order retroactive reimbursement for the cost of enrolling a child in private school, the Supreme Court reasoned in *Burlington* that reimbursement, a retroactive form of relief, must qualify as "appropriate" relief within the meaning of the statute, since prospective injunctive relief would be meaningful only if "administrative and judicial review under the [IDEA] could be completed in a matter of weeks, rather than years." *Burlington*, 471 U.S. at 370.

Courts use a three-part test – referred to as the *Burlington*/*Carter* test – when determining whether reimbursement for private-school expenses is "appropriate" under section 1415(i)(2)(C)(iii). The court considers "(1) whether the school district's proposed plan will provide the child with a [FAPE]; (2) whether the parents' private placement is appropriate to the child's needs; and (3) [whether]

8

the equities" support reimbursement. *C.F. ex rel. R.F. v. N.Y.C. Dep't of Educ.*, 746 F.3d 68, 73 (2d Cir. 2014). "The first two prongs of the [*Burlington*/*Carter*] test generally constitute a binary inquiry that determines whether or not relief is warranted, while the third enables a court to determine the appropriate amount of reimbursement, if any." *A.P. v. N.Y.C. Dep't of Educ.*, No. 22-2636, 2024 WL 763386, at *2 (2d Cir. Feb. 26, 2024).[3]

At the third step of the *Burlington*/*Carter* test, district courts "enjoy[] broad discretion in considering equitable factors relevant to fashioning relief." *Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 112 (2d Cir. 2007). In general, the relief fashioned must "be appropriate in light of the purpose of the [IDEA]," *Burlington*, 471 U.S. at 369 (internal quotation marks omitted), which is "to 'ensure that all children with disabilities have available to them a [FAPE] that emphasizes special education and related services designed to meet their unique needs,'"

---

[3] In 1997, Congress amended the IDEA by adding, among other provisions, 20 U.S.C. § 1412(a)(10)(C), which provides that a court or hearing officer may require a public agency to reimburse parents who unilaterally enroll their disabled child in private school if (1) the child previously received special education services through the public agency and (2) the public agency failed to make "a [FAPE] available to the child in a timely manner prior to that enrollment" in private school. 20 U.S.C. § 1412(a)(10)(C)(ii). Section 1412(a)(10)(C) further provides that reimbursement "may be reduced or denied" under certain circumstances, including "upon a judicial finding of unreasonableness with respect to actions taken by the parents." *Id.* § 1412(a)(10)(C)(iii). Although the 1997 amendments could have been read as codifying a version of *Burlington*/*Carter*, the Supreme Court clarified in 2009 that section 1412(a)(10)(C) was merely "elucidative" and did not "supplant" courts' *Burlington*/*Carter* power under section 1415(i)(2)(C)(iii). *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 242 & n.9 (2009).

*Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 244 (2009) (quoting 28 U.S.C. § 1400(d)(1)(A)). Certain circumstances will counsel against reimbursement. For example, "[t]otal reimbursement will not be appropriate if the court determines that the cost of the private education was unreasonable." *Carter*, 510 U.S. at 16. Similarly, "reimbursement is barred where parents unilaterally arrange for private educational services without ever notifying the school board of their dissatisfaction with their child's IEP." *M.C. ex rel. Mrs. C. v. Voluntown Bd. of Educ.*, 226 F.3d 60, 68 (2d Cir. 2000); *see also* 20 U.S.C. § 1412(a)(10)(C)(iii)(I)(aa)–(bb) (providing that reimbursement may be reduced or denied if parent fails to timely give notice to school district of intent to reject placement and to enroll child in private school at public expense). And another "[i]mportant" consideration is "whether the parents obstructed or were uncooperative in the school district's efforts to meet its obligations under the IDEA." *C.L. v. Scarsdale Union Free Sch. Dist.*, 744 F.3d 826, 840 (2d Cir. 2014); *see also Forest Grove Sch. Dist.*, 557 U.S. at 247 (noting the importance of "the school district's opportunities for evaluating the child").

## III. STANDARD OF REVIEW

"We review for abuse of discretion the fashioning of relief under 20 U.S.C. § 1415(i)(2)(C)(iii)." *Doe v. E. Lyme Bd. of Educ.*, 790 F.3d 440, 448 (2d Cir. 2015). "A district court abuses its discretion when its decision (1) rests on an error of law or a clearly erroneous factual finding, or (2) cannot be found within the range of permissible decisions." *T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 170 (2d Cir. 2014).

## IV. DISCUSSION

### A. A district court reviewing a claim for reimbursement under the IDEA must independently review the equities, without deferring to the state administrative agency's conclusion.

The factual record in this case is not in dispute. Rather, "[t]he decision denying funding . . . under the equitable considerations prong of the *Burlington/Carter* test is the only subject of this appeal." Ferreira Br. at 6. Ferreira argues that a district court reviewing a claim for reimbursement under the IDEA may not defer to the IHO and SRO's balancing of the equities. She further argues that the district court in this case so deferred. We agree with her first contention but reject the second.

11

We have held that a district court reviewing the substantive and procedural adequacy of an IEP at the first step of the *Burlington/Carter* test "must give due weight to the administrative proceedings, mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." *A.C. ex rel. M.C. v. Bd. of Educ. of Chappaqua Cent. Sch. Dist.*, 553 F.3d 165, 171 (2d Cir. 2009) (alterations accepted and internal quotation marks omitted); *see Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206 (1982) (admonishing courts not to "substitute their own notions of sound educational policy for those of the school authorities which they review"). The "weight due administrative proceedings . . . will vary based on the type of determination at issue." *M.H. v. N.Y.C. Dep't of Educ.*, 685 F.3d 217, 244 (2d Cir. 2012). For example, "determinations regarding the substantive adequacy of an IEP should be afforded more weight than determinations concerning whether the IEP was developed according to the proper procedures." *Id.* On issues of law, however, "courts owe no deference to state hearing officers." *Bd. of Educ. of Yorktown Cent. Sch. Dist. v. C.S.*, 990 F.3d 152, 165 (2d Cir. 2021); *see also Muller ex rel. Muller v. Comm. on Special Educ. of E. Islip Union Free Sch. Dist.*, 145 F.3d 95, 102 (2d Cir. 1998) (reviewing *de novo* SRO's decision as to student's

statutory eligibility because "the underlying facts of [the] case as to [the student]'s behavior and performance were not in dispute, [and] only the legal conclusions to be drawn from those facts" were disputed).

Neither we nor the Supreme Court have addressed what deference, if any, a district court owes to an IHO or SRO's balancing of the equities at the third step of *Burlington/Carter*.[4]  Confronted with that question, several district courts in our Circuit have concluded that the deference owed to an administrative body's equitable balancing is "less weighty" than what would be owed to its assessment of an IEP, since equitable balancing, unlike educational policy, is "a matter as to which district courts not only have particular expertise but also broad discretion." *Z.A.R. v. City of New York*, No. 19-cv-2615 (CBA) (PK), 2022 WL 4536241, at *4 (E.D.N.Y. Sept. 28, 2022) (internal quotation marks omitted); *see also G.S. ex rel. L.S. v. Fairfield Bd. of Educ.*, No. 16-cv-1355 (JCH), 2017 WL 2918916, at *13 (D. Conn. July 7, 2017); *S.C. v. Katonah-Lewisboro Cent. Sch. Dist.*, 175 F. Supp. 3d 237, 267 (S.D.N.Y. 2016), *aff'd sub nom. J.C. v. Katonah-Lewisboro Sch. Dist.*, 690 F. App'x 53

---

[4] In *C.L.*, 744 F.3d at 840, we ourselves deferred to the IHO's weighing of the equities and concluded, as the IHO had, that they favored reimbursement.  But we did not explain that deference or address what deference the district court owed to the IHO.  In a summary order earlier this year, however, we concluded that a district court had improperly deferred to an IHO's reimbursement award since the IHO had misapplied the *Burlington/Carter* test.  *See A.P.*, 2024 WL 763386, at *2.

(2d Cir. 2017); *A.R. ex rel. F.P. v. N.Y.C. Dep't of Educ.*, No. 12-cv-4493 (PAC), 2013 WL 5312537, at *5 (S.D.N.Y. Sept. 23, 2013); *E.W.K. ex rel. B.K. v. Bd. of Educ. of Chappaqua Cent. Sch. Dist.*, 884 F. Supp. 2d 39, 48 (S.D.N.Y. 2012); *J.S. v. Scarsdale Union Free Sch. Dist.*, 826 F. Supp. 2d 635, 659 (S.D.N.Y. 2011); *W.M. v. Lakeland Cent. Sch. Dist.*, 783 F. Supp. 2d 497, 504 (S.D.N.Y. 2011).

The text of the IDEA supports the approach taken by these district courts. Section 1415(i)(2) provides a federal cause of action to "[a]ny party aggrieved by the findings and decision" of an SRO (or IHO, if the decision is final). 20 U.S.C. § 1415(i)(2)(A). The statute directs courts reviewing a claim under section 1415(i)(2) to "grant such relief as *the court* determines is appropriate." *Id.* § 1415(i)(2)(C) (emphasis added). In deciding appropriate relief, the court must (1) "receive the records of the administrative proceedings," (2) "hear additional evidence at the request of a party," and (3) "bas[e] its decision on the preponderance of the evidence." *Id.* Section 1415's use of the preponderance of the evidence standard, as well as its authorization of district courts to supplement the record, "plainly suggest less deference" than is called for in other contexts, such as under the Administrative Procedure Act. *Kerkam v. McKenzie*, 862 F.2d 884, 887 (D.C. Cir. 1988); *see* 5 U.S.C. § 706(2); *see also Sebastian M. v. King Philip*

14

*Reg'l Sch. Dist.*, 685 F.3d 79, 85 (1st Cir. 2012) ("[J]udicial review in IDEA cases differs substantially from judicial review of other agency actions, in which courts generally are confined to the administrative record and are held to a highly deferential standard of review." (internal quotation marks omitted)); *Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1471–72 (9th Cir. 1993) (same). The Supreme Court has noted that the IDEA's requirement that the reviewing court receive the records of the administrative proceedings "carries with it the implied requirement that due weight shall be given to these proceedings." *Rowley*, 458 U.S. at 206. But *Rowley* is silent as to what weight is "due" to a state adjudicator's view of the equities.

To be sure, and as already noted, the "IDEA's statutory scheme requires substantial deference to state administrative bodies on matters of educational policy." *Cerra*, 427 F.3d at 191. But we are not persuaded that the balancing of the equities at *Burlington*/*Carter*'s third step involves a "matter[] of educational policy" akin to assessing the adequacy of an IEP or a private-school placement. *Id.* To the contrary, we understand *Burlington*/*Carter*'s third step to incorporate the "[d]eeply rooted" principle that "no man may take advantage of his own wrong." *Glus v. Brooklyn E. Dist. Terminal*, 359 U.S. 231, 232 (1959); *see also United*

15

*States v. Rainford*, 110 F.4th 455, 485 (2d Cir. 2024) (interpreting this principle in the context of the United States Sentencing Guidelines).   Put another way, the third step of *Burlington*/*Carter* can be viewed as requiring district courts to consider the doctrine of unclean hands, which "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief."   *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945).

Therefore, a district court's determination that reimbursement under section 1415(i)(2) should be denied in whole or in part because a parent unreasonably contributed to her need for relief – whether by failing to timely inform the school district of her objections to the IEP, withholding information from the school district that was necessary to craft an appropriate IEP, or enrolling a child in an unreasonably costly private school – is an exercise of judgment that falls squarely within federal courts' expertise.   Indeed, a court's exercise of discretion to craft suitable equitable relief is "the hallmark of traditional equitable practice."   *Starbucks Corp. v. McKinney*, 144 S. Ct. 1570, 1577 (2024); *see Hecht Co. v. Bowles*, 321 U.S. 321, 329 (1944) ("The essence of equity jurisdiction has been the

16

power of the Chancellor to do equity and to mould each decree to the necessities of the particular case. Flexibility rather than rigidity has distinguished it.").

We therefore conclude that the "substantial deference" that the IDEA requires for matters of educational policy is inapplicable to the equitable balancing called for at the third step of the *Burlington*/*Carter* test. While courts are of course free to consider an IHO and/or SRO's views of the equities for their "power to persuade," *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944), we now hold that a district court reviewing a claim pursuant to section 1415(i)(2) errs as a matter of law when it fails to (1) "engage in an independent review of the administrative record," and (2) "make a determination [of the balance of the equities] based on a preponderance of the evidence," *Gagliardo*, 489 F.3d at 112 (internal quotation marks omitted).

**B. The district court neither improperly deferred to the IHO and SRO's views of the equities nor abused its discretion in concluding that the equities disfavored reimbursement.**

Although the district court initially stated that it "defers to SRO Harrington's decision because . . . the IHO and SRO agree as to the equitable considerations disfavoring reimbursement," App'x at 188–89, the district court went on to clarify, after a lengthy discussion of the relevant facts, that it "defers to

17

both the IHO and SRO's *findings of fact* and agrees that, on these facts, [Ferreira] acted unreasonably and frustrated the DOE's attempts to satisfy its obligations under the IDEA," *id.* at 189 (emphasis added). Neither party has argued that the district court erred in adopting the factual record as developed by the IHO, nor did either party seek to submit additional evidence to the district court under section 1415(i)(2)(C). After reviewing the district court's order and the record, we are persuaded that the district court neither improperly deferred to the IHO and SRO's view of the equities nor abused its discretion in concluding that the equities disfavored reimbursement. As the district court explained, the record reflects that, throughout the spring of 2019, the DOE persistently sought to gather updated information about Ferreira's son's needs but was repeatedly thwarted by Ferreira's noncooperation.

On January 3, 2019, the DOE notified Ferreira of a meeting scheduled for January 25 to evaluate her son's social history in preparation for the IEP. Ferreira missed the meeting.[5] After the DOE contacted Ferreira about scheduling the CSE meeting at which the IEP would be developed, Ferreira requested that the meeting

---

[5] Ferreira missed a March evaluation meeting as well, but the record indicates that the DOE unilaterally changed the date of that meeting from its originally scheduled date of March 10 to March 9. *See* App'x at 56. We therefore do not fault Ferreira for failing to attend.

include a "psychologist, social worker, school physician, and a parent," that all members attend in person, that iBrain personnel be included on the meeting notice, that the meeting take place only on a Monday or Friday between 9 a.m. and 1 p.m., that the CSE consider placement at a non-public school, and that any necessary evaluations of her son – the first of which Ferreira had already missed – be completed prior to even the *scheduling* of the CSE meeting.[6] *Id.* at 56–57. Furthermore, Ferreira stated that she would provide her son's recent progress reports and other documentation for consideration at the CSE meeting only after "a mutually agreeable" meeting time had been selected. *Id.* at 57. In the meantime, the DOE continued to collect what information it could about Ferreira's son's needs, completing a classroom observation on March 20, 2019 and conducting an assistive technology evaluation on April 17, 2019. *See id.* On April 9, the school where N.R. was then enrolled – iBrain – developed an

---

[6] We have recently noted elsewhere the existence of "a broader campaign to disrupt the IEP creation process to support the migration of students from iHope to iBrain, which was orchestrated by the founder of iBrain and his related law firm." *Neske v. N.Y.C. Dep't of Educ.*, No. 22-2962, 2023 WL 8888586, at *2 (2d Cir. Dec. 26, 2023). The signature tactic of that scheme involved parents "insist[ing] . . . that a physician be present at the in-person IEP meetings but then fail[ing] to attend themselves," which was "evidently a delaying tactic designed to stymie the DOE's effort to create IEPs for the students." *Id.* (internal quotation marks omitted). The fact pattern here largely matches the fact pattern identified in *Neske*.

19

educational program for him for the 2019–2020 year, but that report was not provided to the CSE. *See id.* at 49.

On April 23, with the new school year approaching, the DOE notified Ferreira by letter that a CSE meeting had been scheduled for May 10. *See id.* at 26. The DOE followed up in a May 8 email, attaching all available evaluations and reminding Ferreira that her assistance was necessary to obtain the current reports on her son's progress at iBrain. *See id.* at 57. On May 9, Ferreira's IEP advocate replied by emailed letter that Ferreira had not received the April 23 letter and was not available for the meeting due to the last-minute notice. *See id.* at 26, 57. The May 9 letter from Ferreira's advocate insisted that the May 10 meeting not proceed without Ferreira and reiterated her request that the meeting consist of the full committee, with a DOE physician attending in person. *See id.* at 57.

On May 13, the DOE notified Ferreira that the CSE meeting would take place on May 20, with a DOE physician, N.R.'s special education teacher, and a parent in attendance, and that the CSE would consider any progress reports that Ferreira submitted. *See id.* On May 17, Ferreira's IEP advocate requested that the CSE meeting be rescheduled so that Ferreira would have time to complete some outstanding transportation forms. Furthermore, the advocate reiterated that

20

Ferreira wished to receive all evaluations from the DOE before any CSE meeting and specifically noted that no psychoeducational or social history evaluation had been submitted to her. *See id.* The DOE replied on May 18 that all available reports had been sent to Ferreira earlier in May, that any outstanding transportation forms could be submitted upon completion, and that the meeting had to proceed on May 20 in order to enable a timely placement. *See id.* at 58.

On May 20, the CSE met to develop the IEP. Ferreira did not attend, nor did any representatives from iBrain. *See id.* A member of the CSE called Ferreira, who claimed that "the school" told her the meeting had been cancelled. *Id.* The CSE member called again to inform her that the meeting would proceed without her, but Ferreira did not answer, so the member left a voicemail to that effect. *See id.* Because Ferreira had submitted no current reports on her son's condition, the CSE's review was limited to the few evaluations the DOE had been able to conduct in the spring, along with the information it had from previous years' IEPs.

When the SRO later concluded that the CSE's IEP was insufficient to meet Ferreira's son's needs, that conclusion was based, in part, on numerous reports about N.R.'s condition that Ferriera submitted to the IHO and SRO but had failed

21

to present to the CSE. The SRO noted this fact, stating that "the CSE was in the unenviable position of crafting an IEP based on a[] limited amount of information," *id.* at 50, and that this "lack of evaluative information available to the May 2019 CSE contributed to" the DOE's failure to offer a FAPE, *id.* at 59.

Given this record of Ferreira's noncooperation, which amply supports the district court's conclusion that Ferreira "obstructed and w[as] uncooperative in the DOE's efforts to meet its obligations under the IDEA," *id.* at 189 (alterations accepted and internal quotation marks omitted), we cannot say that the district court abused its "broad discretion" in concluding, based on the balance of the equities, that no reimbursement for the cost of enrolling N.R. at iBrain during the 2019–2020 school year was warranted, *Gagliardo*, 489 F.3d at 112. The district court therefore was justified in concluding – as have other district courts in analogous situations – that reimbursement was not appropriate. *See, e.g.*, *Bettinger v. N.Y.C. Bd. of Educ.*, No. 06-cv-6889 (PAC), 2007 WL 4208560, at *9 (S.D.N.Y. Nov. 20, 2007) (denying reimbursement "[w]here parents unilaterally place[d] their child in a private school and then frustrate[d] the public educational authorities' ability to 'place the child in an appropriate [public or] private setting of the State's choice,' thus making it impossible to conform to IDEA'[s] mandate").

## V. Conclusion

For the foregoing reasons, we **AFFIRM** the judgment of the district court.